UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Lutheran Brotherhood and Lutheran Brotherhood Variable Insurance Products Company,

Plaintiffs,

v.

American International Specialty Lines Insurance Company; National Union Fire Insurance Company of Pittsburgh, PA; and Continental Casualty Company;

Defendants.

Civil File No. 00-367 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Defendants' Motion to Dismiss and Plaintiffs' Motion for Summary Judgment. For the reasons that follow, the Court denies Defendants' Motion and denies without prejudice Plaintiffs' Motion.

**BACKGROUND**

Plaintiff Lutheran Brotherhood is a fraternal benefit society "established to deliver financial security as well and social and educational enrichment and to encourage charity among its Lutheran membership." (Defs.' Ex. 9 ¶ 20.) Towards this end, Plaintiff offers various products and services to its members, including variable and whole life insurance products sold and marketed through its company, Plaintiff Lutheran Brotherhood Variable Insurance Products Company. In 1997, Plaintiffs purchased primary insurance policies from Defendants American International Speciality Lines Insurance Company ("AISLIC") and

FILED DEC 15 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and excess coverage from Defendant Continental Coverage Company ("Continental"). AISLIC issued Insurance Company's Professional Liability ("ICPL") coverage for"wrongful acts" that occur in the rendering of or failure to render professional service and Investment Management Liability Insurance ("IMI"), covering damages resulting from alleged wrongful acts that occur in the rendering or failure to render investment advisory services. National Union issued a Directors and Officers Liability Insurance Policy ("D&O"), covering any alleged "wrongful acts." Each policy was effective for the period of December 8, 1997 to December 8, 1998.[1]

In the early 1980s, Plaintiffs devised and began to market vanishing premium products "that appeared to afford policyholders investment-like performance and under which the policyholders were assured their out-of-pocket premium payment obligation would cease after a specified number of years." (Defs.' Ex. 10 ¶ 20.) In 1999 and 2000, Plaintiffs were sued in eight class action lawsuits for allegedly engaging in a continuous course of fraudulent and negligent misconduct associated with their vanishing premium life insurance policies.[2] According to the complaints in the underlying actions, Plaintiffs' illegal course of

---

[1] Plaintiffs renewed all of the policies for the period of December 8, 1998 to December 8, 2000. The parties agree that none of the 1998-2000 policies apply to the underlying claims because the notice of potential claims by Plaintiffs was given on November 25, 1998, within the 1997-1998 policy period.

[2] The underlying actions include: Watson v. Lutheran Brotherhood, No. CV-99-7503, removed from Court of Common Pleas of Lucas County, Ohio to the Northern District of Ohio on

conduct began in the early 1980s and continued through the filing of the underlying complaints.

On November 25, 1998, prior to the filing of any of the vanishing premium lawsuits and pursuant to the notice provision contained in the policies, Plaintiffs advised Defendants that lawsuits alleging "life insurance fraud" would probably be forthcoming. (Defs.' Ex. 18.) Since that time, Plaintiffs have tendered all of the underlying complaints to Defendants. Defendants have either denied coverage or failed to respond altogether. On February 18, 2000, Plaintiffs filed the instant lawsuit seeking a declaration that Defendants' policies provide coverage for the underlying claims and that Defendants have breached their contractual obligation to defend and indemnify Plaintiffs in connection with the underlying claims.

---

August 19, 1999; Locke v. Lutheran Brotherhood, No. CV-99-1153, removed from Hennepin County District Court to the District of Minnesota on July 28, 1999; Smerud v. LutheranBrotherhood, No. CT 99-11138, filed August 11, 1999, in Hennepin County District Court; Tzschoppe v. Lutheran Brotherhood, No. CV-99-484, removed from Hennepin County District Court to the District of Minnesota on March 26, 1999; Thompson v. Lutheran Brotherhood, No. CV-99-485, removed from Hennepin County District Court to the District of Minnesota on March 26, 1999; Paulson v. Lutheran Brotherhood, No. CV-99-1328, filed August 30, 1999, in the District of Minnesota; Ahfeldt v. Lutheran Brotherhood, No. MC 00-001070, filed January 21, 2000, in Hennepin County District Court; Johnson v. Lutheran Brotherhood, No. MC 00-001069, filed January 21, 2000, in Hennepin County District Court. In an Order dated December 22, 1999, the Judicial Panel on Multidistrict Litigation transferred all of the above cases to the District of Minnesota for consolidated pretrial proceedings. See 28 U.S.C. § 1407.

## DISCUSSION

### A. Motion to Dismiss.

1. Standard.

For the purposes of Defendants' Motion to Dismiss, the Court takes all facts alleged in Plaintiff's Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, where, as here, the case involves insurance coverage, the Court may consider materials beyond the pleadings that are "necessarily embraced by the pleadings, such as copies of the underlying complaints, the policies themselves, and all documents they incorporate by reference." Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 967 F. Supp. 1148, 1152 (D. Minn. 1997). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

2. Merits.

Through their Motion to Dismiss, Defendants National Union and Continental seek dismissal of Plaintiffs' claim for coverage under the primary and excess D&O policies. The parties appear to agree that Continental's excess coverage is dependent on whether National Union's primary coverage applies. The Court will therefore analyze Plaintiffs' claim solely under the National Union policy, which provides in relevant part that:

> This policy shall pay the loss of the Company arising from a Claim first made against the Company or the Directors or Officers of the Company

> during the Policy Period . . . and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act .. .

(Defs.' Ex 1 at 54.)

> THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS.
>
> This means that only claims actually made during the policy period are covered unless coverage for an extended reporting period is purchased. . . . Claims-made policies do NOT provide coverage for Wrongful acts committed before a fixed retroactive date.

(Id. at 43 (emphasis removed).)

Defendants argue that Plaintiffs' claim falls outside of the coverage period because the relevant wrongful acts, i.e., the development and initial marketing of vanishing premium policies, occurred in the early 1980s, long before the D&O policy came into effect. Plaintiffs contend that dismissal is inappropriate because at least part of the underlying wrongful conduct, i.e., the continued marketing and selling of vanishing premium products, occurred within the policy period. As previously noted, the D&O policy provides coverage for wrongful acts occurring within the policy period–which the Court will assume began on December 8, 1997.[3] (Id. at 43, 54.) Although the underlying complaints do not specifically

---

[3] The parties disagree as to the effective retroactive date of the policy. Defendants argue that the D&O policy expressly covers claims arising out of wrongful acts committed on or after December 8, 1997. Plaintiffs assert that the policy language as to retroactivity is ambiguous and that the coverage period includes wrongful acts committed for an unspecified period before December 8, 1997. The Court need not address this issue at this time because even if the policy coverage only applies to acts committed on or after December 8, 1997, the underlying class action complaints allege wrongdoing by Plaintiffs after that date.

identify any wrongful acts committed on or after that date, each complaint does allege that Plaintiffs engaged in a course of wrongful conduct that continued through the time of the filing of the complaint. (See Pls.' Aff. in Opp'n Mot. to Dismiss, Exs. A-C; Defs.' Aff. in Supp. Mot. to Dismiss, Exs. 9-13.) In fact, most of the named plaintiffs in the underlying class actions did not even purchase vanishing premium policies until the mid to late 1990s. It would strain credulity to conclude that the relevant conduct as to those plaintiffs occurred exclusively in the early 1980s.

During oral argument, Defendants' counsel presented the Court with an internal Lutheran Brotherhood Risk Management Report, which Defendants believe effectively precludes policy coverage. According to Defendants, the report conclusively establishes that Plaintiffs were aware of possible claims against them before they purchased the National Union D&O policy, and as a result, Plaintiffs are not entitled to coverage. In response, Plaintiffs' counsel explained that the report refers generally to industry claims and not claims specific to Lutheran Brotherhood. As the Court noted during arguments, it is not appropriate to consider such disputed evidence when ruling on a motion to dismiss. Therefore, while the report could prove dispositive at some later time during the course of this litigation, it cannot serve as the basis for dismissal at this stage.

In sum, regardless of when the underlying alleged wrongful conduct began, the allegations that Plaintiffs continued to engage in such wrongful conduct after December 8, 1997, render dismissal inappropriate at this time. The Court is simply not convinced

"beyond doubt that [Plaintiffs] can prove no set of facts which would entitle [them] to relief." Morton, 793 F.2d at 187.

**B. Motion for Summary Judgment.**

Plaintiffs have moved for partial summary judgment on the issue of defense costs. In particular, Plaintiffs seek an order directing Defendants "jointly and severally to pay Lutheran Brotherhood's defense costs in the Underlying Actions in excess of $100,000, in addition to the fees and costs incurred by Lutheran Brotherhood in the present declaratory judgment action." (Pls.' Mem. in Supp. Mot. for Sum. J. at 28.) Plaintiffs argue that the issue of defense costs can be decided independent of the issue of indemnity because, as with an insurer's duty to defend, an insurer's duty to advance defense costs is triggered if any part of the underlying action is arguably within the scope of coverage. See Hurley v. Columbia Cas. Co., 976 F. Supp. 268, 275 (D. Del. 1997).

In response, Defendants argue that summary judgment proceedings are premature because the parties have not yet had an opportunity to engage in discovery, and that, at best, genuine issues of material fact exist. Defendants have therefore filed a renewed motion pursuant to Fed. R. Civ. P. 56(f) seeking the denial or continuance of Plaintiffs' Motion pending the completion of discovery.[4] After reviewing the parties' briefs, the underlying complaints, and the policies in issue, the Court is convinced that even under the liberal

---

[4] In an Order dated June 29, 2000, the Court denied Defendants' initial Rule 56(f) Motion without prejudice, explicitly noting that Defendants could renew their Motion if after full briefing it appeared that further factual development was necessary.

standard for assessing the duty to advance defense costs advocated by Plaintiffs, further factual development is necessary for the proper disposition of Plaintiffs' Motion. The Court therefore grants Defendants' Rule 56(f) motion and denies Plaintiffs' Motion for Summary Judgment without prejudice. Plaintiffs are free to renew and rebrief their Motion following the completion of discovery.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court denies Defendants' Motion to Dismiss, grants Defendants' Rule 56(f) Motion, and denies without prejudice Plaintiffs' Motion for Summary Judgment.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Clerk Doc. No. 22) is **DENIED**;
2. Defendants' Renewed Motion to Deny or Continue Plaintiffs' Motion for Partial Summary Judgment (Clerk Doc. No. 46) is **GRANTED**; and
3. Plaintiffs' Motion for Summary Judgment (Clerk Doc. No. 42) is **DENIED WITHOUT PREJUDICE**.

Dated: December 15, 2000

Paul A. Magnuson
United States District Court Judge