**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**LUTHERAN BROTHERHOOD VARIABLE INSURANCE PRODUCTS COMPANY,**

Civil No. 00-367 (PAM/JGL)

Plaintiff,

v.

**ORDER**

**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH; CONTINENTAL CASUALTY COMPANY; and EXECUTIVE RISK SPECIALTY INSURANCE COMPANY,**

Defendants.

---

APPEARANCES

Jeffery Bouslog, Esq. and Timothy Webb, Esq., on behalf of Plaintiff.

Richard Hagstrom, Esq. and Thomas Darden, Esq., on behalf of Defendants.

---

SEP 12 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

A hearing was held on September 6, 2001, before United States Magistrate Judge Jonathan Lebedoff on Plaintiff's Motion to Compel Discovery (Doc. No. 99). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

Plaintiff Lutheran Brotherhood Variable Insurance Products Company ("Lutheran Brotherhood") is engaged in several separate class-action lawsuits involving its policyholders ("the underlying actions"). Lutheran Brotherhood, in turn, holds liability insurance policies with the Defendants, under which it seeks coverage and indemnification for the underlying actions. In the present action, Plaintiff seeks a declaration that Defendants are obliged to pay Plaintiff's defense costs and indemnify Plaintiff in the underlying actions.

Plaintiff served Defendants (collectively "AIG") with Plaintiff's First Set of Interrogatories and Document Requests. Defendants objected to many of the discovery requests, arguing that the requests were, among other things, overly broad; unduly burdensome; irrelevant; not reasonably calculated to lead to the discovery of admissible evidence; violative of privacy rights; or seeking information protected by the attorney-client privilege or the work product doctrine. The Parties have had difficulties scheduling times to meet and confer and those difficulties are partially responsible for Plaintiff's

filing of the present motion. Plaintiff argues that the discovery requests are relevant and are reasonably calculated to lead to the discovery of admissible evidence; that complying with Plaintiff's requests will not be a burden; and that Defendants' privacy and privilege concerns are easily overcome. Plaintiff's memorandum in support if its motion listed twenty disputed interrogatories and twelve disputed document requests. However, at the motion hearing Plaintiff separated the remaining disputes into five categories with little mention of interrogatory or document request numbers. Although similar, these categories are not identical to the categories mentioned in Plaintiff's motion papers. Plaintiff stated that it would concentrate on the document requests at the hearing, but did not state whether the disputes over the interrogatories had been resolved. The Court cannot speculate as to whether the requests not specifically addressed at the hearing are still disputed. Therefore, the parties are advised that any Order regarding a category of discovery will pertain to both interrogatories and document requests associated with that category.

The four categories of discovery discussed at the motion hearing are:

1. Plaintiff's Interrogatories and Document Requests Relating to Underwriting Manuals, Claims Manuals, Handbooks and Other Materials Relating to Market Conduct Actions or Vanishing Premium Lawsuits

2. Plaintiff's Interrogatories and Document Requests Relating to Policies and Policy Forms Containing Exclusions for Vanishing Premium Lawsuits or Market Conduct Actions

3. Plaintiff's Interrogatories and Document Requests Relating to the term "Insurance Consulting Services"

4. Plaintiff's Interrogatorics and Document Requests Relating to Defendants' Affirmative Defenses.

5. Plaintiff's Interrogatories and Document Requests Relating to Defendants' Handling of Similar Claims Filed by Other Insureds

The Court will address each of these categories separately.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). However, the Court may limit discovery when the "burden or expense of the proposed discovery outweighs the likely benefit." Fed. R. Civ. P. 26(b)(2). Written interrogatories and requests for the production of documents are two discovery methods allowed under the Federal Rules. See Fed. R. Civ. P. 26(a)(5). When served with interrogatories, the party must answer and "furnish such information as is available to the party." Fed. R. Civ. P. 33(a). If a party objects to an interrogatory, the party must state the reason for the objection with specificity and answer the interrogatory to the extent it is not objectionable. See Fed. R. Civ. P. 33(b)(1),

33(b)(4). If a party objects to a document request, the party must state the reason for the objection. See Fed. R. Civ. P. 34(b).

### A. Plaintiff's Interrogatories and Document Requests Relating to Underwriting Manuals, Claims Manuals, Handbooks and Other Materials Relating to Market Conduct Actions or Vanishing Premium Lawsuits

Plaintiff's document request No. 7 seeks "all documents, including, but not limited to, underwriting manuals, claims manuals and handbooks that refer or relate in any manner to Market Conduct Actions or Vanishing Premium Lawsuits."

Plaintiff's document request No. 8 seeks "all documents, including, but not limited to, underwriting manuals, claims manuals and handbooks that refer or relate in any manner to the type of policy you issued to Plaintiffs, or any related entity, at issue in this lawsuit."

Defendants originally objected to these requests by asserting that they were vague; ambiguous; overly broad; unduly burdensome; not reasonably calculated to lead to the discovery of admissible evidence; and that they sought information protected under the attorney-client or work product privileges or confidential and proprietary business information. In addition, Defendants asserted that "the terms and conditions of the . . . Policy are clear, unambiguous, and speak for themselves."

Plaintiff argues that it is entitled to this information because it is clearly relevant to the present litigation. The Court agrees. At the motion hearing, both parties stated that this lawsuit will turn on an interpretation of

the policies at issue and Defendants' obligations under those policies. Therefore, information regarding how Defendants instruct their employees to handle such claims and lawsuits is relevant. The Court assumes that Plaintiff purchased insurance from Defendants partially to protect itself against lawsuits. In such an instance, Defendants' internal policies regarding how it handles claims and suits is very relevant. Defendants would have Plaintiff keep its inquiries narrow, limited to only the language of the parties' policies themselves. That argument is unavailing. If the Court were to adopt Defendants' proffered scope of discovery, there would be no discovery. Instead, this case would become an exercise in contract interpretation. It is reasonable for Plaintiff to desire an understanding of Defendants' internal policies regarding claims of this type.

At the motion hearing, Plaintiff argued that Defendants suffer no burden by answering this request since Defendants have this information readily available and the information is not voluminous. Indeed, Plaintiff speculated that each insurer probably has one underwriting manual and one claims manual per policy. Defendant did not rebut these assertions. Thus, Defendants' arguments based on burdensomeness are without merit.

Plaintiff further asserts that Defendants' privacy and privilege objections are without merit because there is a protective order in place in this case. In addition, Plaintiff stated that Defendants are free to redact any identifying information. Plaintiff is only interested in Defendants' responses

to the claims and how Defendants interpret the language of their policies, not the identification of the claimants. Defendants do not argue that such protections are insufficient to protect their interests. Indeed, Defendants admitted that their attorney-client privilege and work-product objections were added to their laundry list of objections after their primary objections merely because "it's done all the time." The objections were proffered only so Defendants could preserve the privileges in the event they encountered protected information during their discovery. Defendants assert no examples of such privileged information. Therefore, Defendants' privilege and privacy objections are without merit.

The Court also finds Defendants' objections based on vagueness and ambiguity without merit. Thus, this part of Plaintiff's motion is granted and the Court orders Defendants to fully respond to Plaintiff's discovery requests regarding Defendants' underwriting manuals, claims manuals, handbooks, and other materials relating to market conduct actions or vanishing premium lawsuits.

### B. Plaintiff's Interrogatories and Document Requests Relating to Policies and Policy Forms Containing Exclusions for Vanishing Premium Lawsuits or Market Conduct Actions

Plaintiff's Document Request No. 4 seeks "all policies issued by you, or representative examples thereof, containing exclusions for Vanishing Premium Lawsuits or Market Conduct Actions."

Defendant originally objected to this request, stating that it was irrelevant; not reasonably calculated to lead to the discovery of admissible evidence; vague; ambiguous; overly broad; unduly burdensome; and that it sought information violative of the attorney-client privilege, the work-product doctrine, and the privacy rights of Defendants' insureds. In addition, Defendants responded that "the conditions of the . . . policy are clear, unambiguous, and speak for themselves."

At the motion hearing, Plaintiff argued that these policy forms are relevant because Plaintiff does not have exclusions for vanishing premium lawsuits or market conduct actions in its policies and, to the extent Defendants have included such exclusions in other policies, it would demonstrate Defendants' purposeful intent to omit such language from their policies with Plaintiff. Defendants argue that Plaintiff's policies are the only policies relevant to this litigation. The Court disagrees. Plaintiff is entitled to know whether Defendants routinely include exclusionary language in their policies. If so, the failure to include such language in Plaintiff's policy could be important insofar as it indicates Defendants' intent to write a policy which specifically did not include exclusionary language. As Defendants stated in the motion hearing, "The issue is whether these particular contracts provide coverage on these facts." In this instance, the absence of certain commonly-included language could be very telling regarding the scope of policy coverage. Insofar as the language exists on policy forms or other policies within

Defendants' companies, such language is reasonably calculated to lead to the discovery of admissible evidence regarding the intent of Defendants at the time the policy was executed.

Furthermore, the Court finds Defendants' objections based on vagueness, ambiguity, overbreadth, burdensomeness, privacy, and privilege unavailing. The request is appropriately narrow in scope and does not seek an unrealistic number of policy forms. Defendants proffer no examples of burdensomeness or privilege to support their objections. Under the Rules, boilerplate objections such as these are not appropriate. See Fed. R. Civ. P. 33(b)(4); 34(b). In addition, based on the confidentiality agreement already in place in this case and Plaintiff's acquiescence to liberal redacting of identifying information and privileged documents, Defendants' privacy concerns should be allayed. Therefore, this part of Plaintiff's motion is granted and the Court orders Defendants to produce all documents relevant to policies and policy forms containing exclusions for vanishing premium lawsuits or market conduct actions.

### C. Plaintiff's Interrogatories and Document Requests Relating to the Term "Insurance Consulting Services"

Plaintiff's Document Request No. 6 seeks "all documents that you contend define or otherwise describe your interpretation of the phrase "insurance consulting services." Plaintiff argues that this information is relevant because Defendants claim that the definition of this phrase prohibits coverage under the policies at issue. Defendants respond that they have

provided a definition of "insurance consulting services" in their response to Interrogatory No. 8 which asked Defendants to "[i]dentify what you contend is the applicable definition of 'insurance consulting services' in this matter." In addition, Defendants responded to Interrogatory No. 11 by stating that "the definition of insurance consulting is supported by common sense, the ordinary and every day meaning of the phrases, the NAIC Agents and Brokers Licensing Model Act and pertinent and applicable state statutory provisions regarding insurance consultants and insurance consulting." Plaintiff contends that Defendants' response is still deficient because it lacks documentation regarding how Defendants decided upon their definition. The Court finds this argument without merit. Defendants have supplied information which is much more comprehensive than the "cut-and-paste" answers alleged by Plaintiff. Defendants' answers are responsive to Plaintiff's requests and therefore, this part of Plaintiff's motion is denied.

### D. <u>Plaintiff's Interrogatories and Document Requests Relating to Defendants' Affirmative Defenses</u>

In response to Plaintiff's Interrogatory Nos. 16, 19, and 22, and Document Request No. 9, Defendants raised multiple objections. At the motion hearing, however, Defendants admitted that Plaintiff is entitled to the requested information. Defendants assert only that much of the requested discovery is premature and that gathering some of the requested information will require time consuming manual searches. The Court, therefore, assumes that Defendants no longer assert the list of objections proffered in their

original responses. Plaintiff responds that the requested information is not premature, that Plaintiff needs the information before it can decide whom to depose and before it can know how to prepare proper responses to Defendants' claims.

The Court does not find Plaintiff's requests premature. The interrogatories at issue are narrowly tailored to seek information relating to Defendants' affirmative defenses. This is precisely the kind of information contemplated by the Rules. See Fed. R. Civ. P. 26 (b)(1). The Court presumes Defendants have factual bases for their defenses and it is illogical to think that Plaintiff does not need this information to prepare proper responses. Regarding Defendants' argument that their defenses are still evolving and may change as discovery progresses, the Court acknowledges that the discovery process is continuing and recognizes that parties have an on-going obligation to supplement their answers. However, Defendants cannot use the nature of the discovery process to withhold relevant information currently in their possession on the pretext of "later disclosure." The fact that the discovery deadline is months away has no bearing on Defendants' obligation to fully respond to Plaintiff's discovery requests. See Fed. R. Civ. P. 33(a); 34(b). As more information becomes known to Defendants they, of course, must supplement their answers and responses accordingly. See Fed. R. Civ. P. 26(e).

The only issue remaining regarding this category of documents is the timing of the disclosures. Plaintiff argues that Defendants have had months to gather this information and granting an extension would not only further delay discovery, but would also reward Defendants for their dilatory behavior. At the motion hearing, Defendants' Counsel stated that supplementing these responses will necessitate a manual investigation of voluminous documents currently in the possession of Defendants and therefore an extension of time to respond is appropriate. An extension of sixty days was discussed at the motion hearing.

The Court finds that in this case allowing Defendants forty-five days to respond to Plaintiff's discovery requests is appropriate. The Rules require parties to respond to discovery requests within thirty days. See Fed. R. Civ. P. 33(b). Granting Defendants an additional fifteen days to respond acknowledges the difficulties Defendants may encounter as they conduct their manual search, without pushing the process perilously close to the current discovery deadline of December 1, 2001. Therefore, this part of Plaintiff's motion is granted.

**E. Plaintiff's Interrogatories and Document Requests Relating to Defendants' Handling of Similar Claims Filed by Other Insureds**

Plaintiff requests information relating to Defendants' methods of handling claims similar to those Plaintiff filed with Defendants. Plaintiff argues that such information is relevant to this case because it will indicate

how Defendants have previously interpreted contract provisions similar to provisions in Plaintiff's policies with Defendants. Defendants initially objected to these requests on numerous grounds, including relevancy, vagueness, overbreadth, privacy, and burdensomeness. At the motion hearing, however, the parties addressed only three objections. The Court assumes the parties have resolved their disputes based on the other objections and will discuss only the three objections debated at the hearing: relevancy, burdensomeness, and privacy concerns.

### 1. <u>Defendants' Objections Based on Relevancy</u>

Defendants argue that this case is only about Defendants' obligations under the policies between Plaintiff and Defendants, that information related to other policies is not relevant, and that a comparison with other claims would be pointless since each claim is unique and the facts of one claim have no bearing on the outcome of another claim. Plaintiff responds that this information is indeed relevant because whether or not Plaintiff was wrongly denied insurance and indemnity coverage will turn, at least in part, on how Defendants have interpreted their own policy language in the past. In addition, Plaintiff argues that the facts in cases of this type are not necessarily unique, that the issues involved are invariably the same from case to case. Therefore, Plaintiff argues, information regarding other cases will not result in a comparison of "apples and oranges."

A party is allowed to fully explore any relevant facts so that it can present reasoned and informed evidence and theories at trial. In the context of discovery, "relevant" has been defined as encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Hickman, 329 U.S. at 501. Discovery should not be limited to matters in the pleadings because discovery is designed to help establish and clarify the issues in a case. See id. at 500-01. Additionally, discovery should not be limited to the merits of a case because other fact-oriented issues, possibly unrelated to the merits, may arise and properly be the subject of discovery. See Oppenheimer Fund, 437 U.S. at 351.

The Court finds that information relating to other policies is relevant to this case. It is important for Plaintiff to understand how Defendants have addressed similar policy language in the past. The parties agree that this case will turn on the interpretation of certain words and phrases contained in the policies. It is, therefore, relevant to garner all information reasonably related to the interpretation of that language. Plaintiff knows how Defendants responded to its claims for coverage. What they want to know is how that decision squares with Defendants' prior interpretation of similar policies and their handling of similar claims. Courts that have addressed this issue have found information related to other policies issued by the same insurer relevant. See Nestle Foods Corp. v. Aetna Casualty and Surety Co.,

135 F.R.D. 101, 106 (D. N.J. 1990) (allowing discovery of drafting language in policies other than those held by Plaintiff); Minn. Mining & Mfr. Co. v. Commercial Union Ins. Co., No. 88-325, 1989 WL 241716, at *1-2 (D. N.J. Oct. 13, 1989) (allowing discovery related to policies involved in two prior actions); Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283, 287 (D. D.C. 1986) (allowing discovery of other claims involving the chemical at issue in the instant litigation).

### 2. Defendants' Objections Based on Burdensomeness

Once the Court has determined that the information Plaintiff seeks is relevant, Defendants have the burden of proving that providing that information is overly burdensome. See Fed. R. Civ. P. 26(b)(2). The Court may limit discovery when the "burden or expense of the proposed discovery outweighs the likely benefit." Id.

In the instant case, Defendants argue that manually searching their files for similar claims will take tens of thousands of hours. This burden, Defendants argue, does not justify any benefit that may result from the search. At the motion hearing, Plaintiff responded that it will provide Defendants a list of insurance companies who were sued for vanishing premiums during the relevant time period. Plaintiff asserts that this list will allow Defendants to search their computer system and quickly discover if any of their insureds were involved in those cases. Plaintiff estimates that using this system will narrow Defendants' manual search to between eighty and

one hundred files, thus eliminating the Defendants' burden. Defendants admit that Plaintiff's list will make the computer search possible. However, Defendants have doubts that the computer search will only yield eighty to one hundred files which must then be searched by hand. Defendants argue that the number of files requiring a hand search may still be overwhelming.

The Court finds that Plaintiff's list is a logical starting point for discovery related to this issue. Defendants admit they have not had the opportunity to examine Plaintiff's list nor to see what results using the list will garner. Therefore, Defendants' assertion that they may still have to conduct a hand search of 100,000 files is premature. Accordingly, Plaintiff is ordered to provide Defendants the list of insurance companies sued for vanishing premiums and Defendants are ordered to use the list to help them answer Plaintiff's discovery requests related to the issue of Defendants' responses to other similar claims.

### 3. **Defendants' Objections Based on Privacy Concerns**

Defendants argue that if they are required to provide information related to the claims of other insureds, they will violate confidentiality agreements and protective orders in the process. Plaintiff responds that Defendants are free to redact any information which identifies the parties involved. All Plaintiff is concerned with are the issues in each claim and Defendants' responses to those issues. In addition, Plaintiff argues that the confidentiality agreement it signed in this case will further protect Defendants

and their insureds. The Court finds the confidentiality agreement and Plaintiff's willingness to accept redacted documents sufficient protection for Defendants and their insureds. Once all identifying information is redacted, there is no opportunity for a breach of confidentiality. Thus, Defendants are ordered to provide Plaintiff with copies of pertinent claims files, redacted for identifying information as Defendants deem appropriate. Accordingly, this part of Plaintiff's motion is granted.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Plaintiff's Motion to Compel Discovery (Doc. No. 99) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order; and

(2) Parties must comply with the Order and respond to any outstanding discovery requests by October 26, 2001.

Dated: September 11, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge